UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

ARK LAND COMPANY,                          )
                                           )
          Plaintiff,                       )          Civil No. 10-09-GFVT
                                           )
V.                                         )
                                           )
HARLAN LEE LAND, LLC, DARRELL G.           )          **MEMORANDUM OPINION**
BARNWELL, STEPHANIE BARNWELL               )              **& ORDER**
MCCARTHY, BILLIE J. BARNWELL, and          )
CAROLYN B. PETREY,                         )
                                           )
          Defendants.                      )
                                           )

                          ***  ***  ***  ***

     This matter is before the Court on the Motion to Dismiss [R. 20, 32] filed by Defendants

Harlan Lee Land, LLC, Stephanie B. McCarthy, and Billie Barnwell.  Defendants Darrell G.

Barnwell and Carolyn B. Petrey have also filed a Motion to Dismiss [R. 22, 33].[1]  Plaintiff Ark

Land Company filed a Response [R. 39] in opposition to both motions.  For the reasons set forth

below, the Defendants' motions will be denied.[2]

---

[1]The Defendants originally filed their motions to dismiss shortly before the Court granted
Ark Land leave to file an Amended Complaint that cured insufficient allegations of jurisdiction
in its original Complaint.  The Defendants then re-filed motions to dismiss that referenced the
amended pleading.

[2]In the Motion to Dismiss filed by Defendants Darrell G. Barnwell and Petrey, they state
that they rely on the Memorandum of Law and Proposed Order submitted by their co-defendants.
[R. 22.]  Accordingly, hereinafter the Court will refer to both motions collectively as the
Defendants' Motion to Dismiss.

# I.

In its Amended Complaint for declaratory judgment, Ark Land states that in June of 1983, Harlan Lee Land Corporation, predecessor in interest to Harlan Lee Land, LLC, as "Lessor," and Millers Cove Energy Company, Inc., predecessor in interest to Ark Land Company, as "Lessee," entered into a Lease to permit Millers Cove to mine coal on the property in Kentucky and Virginia at issue in this litigation ("the Property"). [R. 30, ¶ 1; *see id.*, Attach. 1.] The Lease was to expire on July 31, 2009. [*Id.,* ¶ 13; *see id.*, Attach. 1.] Ark Land further states that in 1991, an Amendment to the Lease was executed. [*Id.*, ¶ 17; *see id.*, Attach. 2.] Under the Lease Amendment, it was agreed that Tenant Millers Cove would have the option to partially extend the Lease "for two additional ten year periods . . . for the sole purpose of extending Tenant's right to transport coal across the leased premises in return for a wheelage royalty . . . without any obligation to pay any minimum royalty under the Lease during any Extended Term." [*Id.*, Attach. 2; *see id.*, ¶ 18.]

Ark Land states that in 1991 it entered into an asset purchase agreement with Millers Cove, pursuant to which Millers Cove transferred its fee interest in the Property to Ark Land. [*Id.*, ¶ 19.] Millers Cove further assigned its rights in the Lease, as amended, to Ark Land. [*Id.*, ¶ 20; *see id.*, Attach. 3.] Ark Land represents that it now owns an undivided sixty percent interest in the surface and minerals of the Property, and the Defendants collectively own a forty percent fee simple interest in the Property of various percentages. [*Id.*, ¶ 21.] Ark Land also represents that the Defendants are the current "Landlord" under the Lease. [*Id.*, ¶ 22.]

According to Ark Land, it has used the Property to support its various mining operations since 1991. [*Id.*, ¶ 23.] Its mining operations have included, in addition to mining coal on the

Property, "transporting coal mined from the Property, transporting coal mined on other lands across the Property and processing and shipping that coal at various surface facilities, including a coal refuse impoundment, in connection with its operations." [*Id.*] Ark Land refers to these operations collectively as its "Surface Use" of the Property. [*Id.*]

Ark Land alleges that it has the right to continue its Surface Use of the Property both by virtue of the Lease, as amended, and its status as a co-tenant of the Property. [*Id.*, ¶¶ 25-6.] The Defendants, however, object to its continued Surface Use of the Property. [*Id.*, ¶¶ 28-9.] Thus, in Count I of its Amended Complaint, Ark Land asks the Court to declare its rights with respect to the Property. [*Id.*, ¶¶ 31-5.] Specifically, Ark Land petitions the Court to declare that it has the right to continue to engage in its Surface Use of the Property to support its mining operations. [*Id.*, ¶ 35.] In Count II, Ark Land states that if the Court finds that it does not have the right to continue its Surface Use of the Property, it wants the Court to declare the parties' respective rights to the Property and determine the appropriate division of the Property among the parties. [*Id.*, ¶ 43.]

## II.

### A.

The Defendants first argue that Ark Land is attempting to have the Court resolve a matter that Ark Land has already agreed to arbitrate. The Defendants point specifically to the following provision in the Lease Amendment:

> The Landlord and Tenant hereby agree that a wheelage royalty . . . shall be set under the Lease at the beginning of each Extended Term at an amount equal to the average wheelage agreed upon in five typical arms-length transactions in Lee County, Virginia and Harlan County, Kentucky during the two years immediately preceding any Extended Term. If the parties cannot agree on the five transactions

to be used in calculating the wheelage or if fewer than five transactions occurred during the two year period, the wheelage shall be a normal and reasonable amount under the circumstances then prevailing in the area. *If the Landlord and Tenant cannot agree on the amount of wheelage, the matter shall be submitted to binding arbitration to be governed by the rules of the American Arbitration Association.*

[R. 30, Attach. 2.]

The Sixth Circuit has found that "[b]efore compelling an unwilling party to arbitrate, a court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute fall within the substantive scope of that agreement." *Bratt Enterprises, Inc. v. Noble International Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) (citation and internal quotation marks omitted). According to the court, "[t]he duty to arbitrate a dispute derives from the parties' agreement and a party cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." *Id.* (citations omitted). Further, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* at 613 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. Of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (2003)).

Here, Ark Land does not dispute that the arbitration agreement contained in the Lease Amendment is valid and enforceable. Instead, Ark Land contends that the claims raised in its Amended Complaint fall outside the scope of this agreement. The Court agrees.

The arbitration provision in this case is not ambiguous. It only applies to disputes about the amount of the wheelage royalty Ark Land must pay to the Defendants. Ark Land's claims,

however, relate to what rights it has to use the Property to support its mining operations by virtue of the Lease Amendment and/or its status as a co-tenant. Although Ark Land's Amended Complaint references its obligation to pay a wheelage royalty, it does not indicate the presence of any dispute or disagreement about the amount of that royalty. Indeed, based on the pleadings submitted on the Defendants' Motion to Dismiss, it appears that the essence of the dispute between the parties relates to Ark Land's use of a coal refuse impoundment located on the Virginia portion of the Property. Accordingly, Ark Land's claims fall outside the scope of the arbitration agreement.[3]

In their Reply Memorandum [R. 40], the Defendants narrow their argument with respect to the arbitration provision, arguing not that Ark Land's entire Amended Complaint is an attempt to have the Court resolve a matter that must be arbitrated, but that Ark Land's *partition claim* is an attempt to avoid its wheelage royalty obligations. According to the Defendants, if this Court were to consider Ark Land's partition claims, it would render the wheelage royalty payment obligation a nullity. Even in this argument, however, the Defendants do not suggest that there is a dispute about the amount of the wheelage royalty payments.[4] Again, such a dispute only falls within the scope of the arbitration agreement. Thus, the Court will not compel Ark Land to arbitrate its claims.

---

[3] Of course, to the extent the parties do disagree about the wheelage royalty amount, or if such disagreement arises during the course of this litigation, that dispute must be arbitrated.

[4] Instead, this argument appears to relate to whether Ark Land has the right to the relief requested in Count II of its Amended Complaint.

**B.**

The Defendants next argue, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Count I of Ark Land's Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed. The Court disagrees.

In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.).

In support of their motion to dismiss Count I, the Defendants first contend that Ark Land enjoys no rights pursuant to the original Lease. Thus, according to the Defendants, as a matter of law Ark Land is not entitled to a declaration that it may continue its Surface Use of the Property, and specifically its use of the coal refuse impoundment located on the Virgina portion of the

Property,[5] based on the Lease. As noted by Ark Land, however, the Lease has not expired, it has been amended. And Ark Land has a plausible claim that it has rights with respect to the Property, particularly the right to transport coal across the Property in exchange for a wheelage royalty, by virtue of the amended Lease. Accordingly, the Court cannot find as a matter of law that Ark Land enjoys no rights pursuant to the Lease.

Second, the Defendants contend that Ark Land's claims in Count I based on co-tenancy fail as a matter of law. Specifically, the Defendants contend that Ark Land's Surface Use of the Property beyond that permitted by the Lease Amendment, namely its operation of a coal refuse area, constitutes waste under Virginia and Kentucky law, as the Defendants as co-tenants have not consented to that use.

With this argument, the Defendants rely in part on facts not alleged in the Amended Complaint. *See DirecTv, Inc. v. Treesh*, 487 F.3d 471, 476-77 (6th Cir. 2007). Further, in *Chosar Corp. v. Owens*, 235 Va. 660, 370 S.E.2d 305, 307 (1988),[6] the Virginia Supreme Court explained that "[w]hat constitutes waste . . . depends upon the circumstances of each particular case." *Id.* (citation omitted). For example, "the cutting of timber in some instances may constitute waste, while in other cases it may be a benefit." *Id.* Accordingly, without the benefit of further factual development through discovery, the Court cannot determine whether Ark Land's use of the coal refuse impoundment constitutes waste as a matter of law.

---

[5]The parties agree that the coal refuse impoundment is located on the Virginia portion of the Property, not the Kentucky portion of the Property.

[6]Under both Virginia and Kentucky law, a tenant is liable to his or her co-tenants for damages if he or she commits waste. Va. Code § 55-212; Ky. Rev. Stat. § 381.390. Here, Ark Land concedes that Virginia law governs whether its use of the coal refuse impoundment constitutes waste.

## C.

With respect to Count II of Ark Land's Amended Complaint, the Defendants make four arguments. First, they argue that the claim in Count II is identical to the claim in Count I and must be dismissed. In contrast to Count I, however, which asks the Court to declare Ark Land's rights in relation to the Property, Count II asks the Court alternatively to partition the Kentucky portion of the Property and determine the appropriate division of the Virginia portion of the Property among the parties. As Ark Land points out, Federal Rule of Civil Procedure 8(a)(3) permits a plaintiff to ask for "relief in the alternative or different types of relief." Thus, the Court will not dismiss Count II as redundant or duplicative.

Second, the Defendants claim that Ark Land did not comply with the requirements of Kentucky's statute governing partition proceedings. Pursuant to KRS 381.135(b), "[a] person desiring a division of land held jointly with others . . . may file . . . a petition containing a description of the land, a statement of the names of those having an interest in it, and the amount of such interest, with a prayer for the division or allotment." Additionally, "[t]he written evidences of the title to the land, or copies thereof, if there be any, must be filed with the petition." *Id.* The Defendants argue that Ark Land's partition pleading does not include a description of the land or the written evidences of its title to the land.

In its response brief, Ark Land notes that a description of the Property was in fact attached as Exhibit A to the Kentucky and Virginia Lease Amendments, both of which were attached to its Amended Complaint. [*See* R. 30, Attach. 2.] Ark Land further attaches evidence of its title to the Property to its responsive pleading. [*See* R. 39, Attachs. 4-7.] In reply, the Defendants contend that Ark Land cannot amend its complaint by attaching exhibits to its

response.

In *Bartee v. Edmunds*, 96 S.W. 535, 536 (Ky. 1906), the court stated that where title

papers are not filed with the petition, "[t]he proper practice is to have the plaintiff ruled to file the

title papers."  Further, in *Toler's Heirs v. Toler*, 110 S.W. 388 (Ky. 1908), the court found that in

an action for division of land, "either written evidence of the title should be filed or the petition

must state facts which show title, and these facts must be proved."  Thus, here, by stating the

facts which show title and attaching a description of the Property to its complaint, and by

attaching written evidence of title to its responsive pleading, Ark Land has substantially complied

with the requirements of KRS 381.135(b).  *See Nickels v. Mineral Development Co.*, 153 S.W.

235, 236 (Ky. 1913)  The Court will not dismiss Count II for failure to comply with the statute.

Third, the Defendants argue that this Court, sitting in Kentucky, may not partition land in

Virginia.  *See Fehr v. Fehr*, 284 S.W.3d 149, 152 (Ky. App. 2009) ("It is well established law

that Kentucky courts are without jurisdiction to settle title or possessory rights to land outside the

Commonwealth.").  Ark Land agrees.  Ark Land states, however, that its complaint does not ask

the Court to partition the Virginia portion of the Property, and it points to the following specific

language in support of that statement:

> 46.     With respect to the portion of the property located in Harlan County,
> Kentucky . . ., after determining the parties' respective rights to the Property, Ark
> Land respectfully requests that this Court immediately initiate proceedings for a
> partition of the Kentucky Portion of the Property and divide the Kentucky Portion
> of the Property among the parties.

> 47.     With respect to the portion of the Property located in Lee County, Virginia
> . . ., after determining the parties' respective rights to the Property, pursuant to 28
> U.S.C. § 2201, Ark Land respectfully requests that this Court declare the parties'
> respective rights to the Virginia Portion of the Property and determine the
> appropriate division of the Virginia Portion of the Property among the parties.

[R. 30, ¶¶ 46-7.]  Based on this language, the Court agrees that Count II does not ask the Court to partition the Virginia portion of the Property, but instead only asks the Court to determine the appropriate division of this portion.

While a court may not enter a decree that operates directly on property or affects title to property located in another state, a court *does* have the power to compel an individual properly before it to take action that affects property in another jurisdiction.  *See Fehr*, 284 S.W.3d at 153.  In *Fall v. Eastin*, for example, the Supreme Court noted the "well-recognized principle" that, when land that forms

> the subject matter of suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but *indirectly* affected by the relief granted.

215 U.S. 1, 11 (1909) (emphasis in original).  According to the Court, "In such case, the decree is not of itself legal title, nor does it transfer the legal title.  It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment, or sequestration." *Id.*  Similarly, in *Fehr*, the Kentucky Court of Appeals noted that "the distinction between an action to adjudicate title to land and that to determine the parties' interests in land was recognized long ago in our jurisprudence and has been subsequently reaffirmed."  284 S.W.3d at 152 (citations omitted).  The court explained that "[a]lthough a Kentucky court does not have jurisdiction to quiet title or to secure possession of foreign land, *in personam* jurisdiction is sufficient to decide the interests of the parties in that same land."  *Id.* (citation omitted). "However, consistent with the limitations on the court's jurisdiction, an action to enforce a

foreign decree so as to transfer title in accordance with the decree generally requires a separate action in the jurisdiction in which it is located." *Id.* at 153.

The Defendants contend that this is not a proper case in which to exercise in personam jurisdiction to affect out-of-state land, as it does not involve fraud, contract, or trust. Some cases do appear to suggest that a court may only determine the interests of the parties in land outside its jurisdiction in cases of fraud, of contract, or of trust. *See Pillow v. Southwest Virginia Imp. Co.*, 23 S.E. 32, 35 (Va. 1895); *Wimer v. Wimer*, 5 S.E. 536 (Va. 1888). Indeed, both *Fall v. Eastin* and *Fehr* involved marital dissolution proceedings. In *Louisville & N.R. Co. v. Western Union Telegraph Co.*, 207 F. 1, 6 (6th Cir. 1913), however, the Sixth Circuit found that "there is no apparent reason for such limitation." Further, the Supreme Court's language in *Fall v. Eastin* suggests that it is a broad principle that a court may indirectly affect land in another state by virtue of its in personam jurisdiction, not a narrow principle that applies to a limited class of cases. *See Fall*, 215 U.S. at 11. Accordingly, the Court will not dismiss Count II of Ark Land's complaint as to the Virginia portion of the property.

Finally, the Defendants argue that the Court may not partition mineral interests in the Virginia portion of the Property as a matter of law. The Defendants cite a Virginia statute in support of this argument, which provides that "[t]enants in common, joint tenants, executors with the power to seel, and coparceners of real property, *including mineral rights east and south of the Clinch River*, shall be compellable to make partition and may compel partition . . . ." Va. Code § 8.01-81 (emphasis added). In *Chosar Corp. v. Owens*, 235 Va. 660, 665, 370 S.E.2d 305, 308 (1988), the Virginia Supreme Court held that, "by negative implication, Code § 8.01-81 prohibits the partitioning of mineral rights west and north of the Clinch River . . . ." According to the

Defendants, Ark Land clearly seeks partition of mineral interests west and north of the Clinch River.

In response, Ark Land contends that § 8.01-81 only prohibits partition of mineral rights east and south of the Clinch River by themselves, not partition of the entire tract of the Property. Although this is an interesting dispute, it is a dispute regarding Virginia law that the Court declines to resolve. As noted previously, the Court is without jurisdiction to partition property in Virginia. Thus, the Court has no power to partition pursuant to § 8.01-81.[7]

### III.

For the reasons above, Ark Land's claims will be permitted to go forward at this stage. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendants' Motions to Dismiss [R. 20, 22, 32, 33] are **DENIED**.

This the 22nd day of September, 2010.



**Signed By:**

_**Gregory F. Van Tatenhove**_

**United States District Judge**

---

[7]Presumably, the Virginia courts could resolve this dispute if asked to enforce a judgment of this Court that indirectly affects the Virginia portion of the property.