UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| ARK LAND COMPANY, | )<br>)<br>) |
|     Plaintiff/Counterclaim Defendant, | )<br>) |
| v. | )<br>) |
| HARLAN LEE LAND, LLC, et al., | )    No. 6:10-CV-9-GFVT<br>) |
|     Defendants/Counterclaim Plaintiffs, | )    MEMORANDUM OPINION and<br>)    ORDER |
| v. | )<br>) |
| LONE MOUNTAIN PROCESSING, INC., | )<br>)<br>) |
|     Counterclaim Defendant. | )<br>) |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Having been granted leave to do so, Defendants/Counterclaim Plaintiffs (collectively, "Harlan Lee") filed a motion to compel concerning some of its document requests seeking the production of certain financial information. (D.E. 80). Pursuant to a briefing schedule established by the Court, the parties filed a response and reply to the motion. (D.E. 86, 92). Fully briefed, the motion to compel is ripe for adjudication. Following an agreed stay that applied to all pending motions, discovery has re-commenced. For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

# I. PRELIMINARY MATTERS

As an initial matter, the Court is obliged to note the unhelpful manner in which the issues raised by the Motion to Compel were discussed between the parties following service of the discovery requests at issue and the responses thereto. During the July 12, 2011 telephone conference conducted in an attempt to narrow or resolve the dispute at issue, the Court ordered that all relevant correspondence be filed in the record so as to allow the Court to measure the reasonableness of the parties' positions. That correspondence was filed as ordered. Unfortunately, that correspondence reveals posturing that likely led to the creation of disputes instead of the resolution of them.

As an example, by letter dated May 11, 2011, counsel for Ark Land[1] took the position that the requested financial documents "are irrelevant" and stated "to the extent Defendants can provide legal authority to support their assertion that the requested documents would be appropriately considered in this case, Counterclaim Defendants will review it and supplement their production accordingly." (D.E. 80-7 at 2). A reasonable request, to be sure. And how was that request answered? Although there were apparently intervening telephonic discussions, counsel for Harlan Lee responded on June 13, 2011, by simply stating, "We will prepare a Motion to compel with respect to the financial records and other deficiencies we have noted in Ark's and Lone Mountain's responses." (D.E. 80-9 at 2). No authority was provided by Harlan Lee in that letter. Instead, in a June 20, 2011 letter counsel for Ark Land indicated "you still have not

---

[1] Throughout this Memorandum Opinion, the Court refers to the Plaintiff/Counterclaim Defendants collectively as "Ark Land," and individually as Ark Land Company and Lone Mountain, respectively.

provided any good faith basis or explanation for the [request for financial records]." (D.E. 80-10 at 1-2). On June 23, 2011, counsel for Harlan Lee provided a vague two-sentence explanation of its position with a citation to a single case, but instead of asking for a response, simply stated, "[G]iven Ark's and Lone Mountain's position on the financial, operations, and projection documents, we will file a motion to compel as soon as it is drafted." (D.E. 80-12 at 2). Counsel for Harlan Lee closed this particular communication by denying engaging in a letter-writing campaign and stating, "We have *tried* to go to significant efforts to communicate our reasons for seeking the documents requested." (*Id.*) (emphasis added).

Any real effort would have included providing the authority requested by the May 11 letter. Instead, a month later, counsel for Harlan Lee merely declared that a motion to compel would be filed, then in a subsequent letter authority was cited accompanied by another declaration that a motion to compel would be filed.[2] Harlan Lee could not have reasonably expected that a demand for production under threat of filing a motion, without providing authority as initially requested, would have resulted in anything but intransigence on the part of Ark Land.

Not only did the tone and fervor of the letter-writing campaign create a bitter atmosphere undermining the goal of resolving disputes, but the substance of the

---

[2] Notably, this authority was provided by counsel for Harlan Lee 40 days after it was requested. This time period is interesting and notable because, after its Motion to Compel had been pending for 45 days, counsel for Harlan Lee wrote the undersigned suggesting that delays in the production of the information at issue are costly to his clients. (D.E. 110). Having waited 40 days to provide a citation to a single case in support of its position, Harlan Lee's complaints about "delays" in this matter—whether directed at Ark Land or otherwise—ring hollow. Furthermore, future communications to the undersigned concerning pending matters shall be made by way of a formal filing instead of correspondence.

discussions has made the Court's consideration of the issues more difficult than is necessary. Harlan Lee did not ask for any description of documents responsive to Requests 58-65/68-69 that were not been produced because of objections, and counsel for Ark Land never provided such a description. Thus, the Court is left with a vague sense of precisely what kinds of documents are at issue. Any relief is going to be necessarily general as a result, and if there are further disputes between the parties they are expected to engage in a more detailed and substantive discussion of the issues in an attempt to resolve them.

## II. MOTION TO COMPEL

This case involves a dispute over the surface rights of certain real property situated in Lee County, Virginia and Harlan County, Kentucky. In an effort to resolve the dispute, Ark Land Company filed this lawsuit requesting a declaration that it may continue to engage in its surface use of the Virginia property to support its mining operations. (D.E. 30). Harlan Lee filed a counterclaim alleging that Ark Land's use of the property, which includes the dumping of waste from a nearby coal processing plant into a refuse impoundment, has been wrongful. (D.E. 75). Harlan Lee has asserted claims for trespass and waste and seeks both legal and equitable relief. (*Id.*).

At issue in Harlan Lee's motion to compel are 10 requests for production of documents propounded upon Lone Mountain on January 14, 2011. In particular, the motion seeks an order compelling the disclosure of documents responsive to requests for

production 58-65 and 68-69,[3] which have gone unanswered by Lone Mountain other than by way of objection. The discovery requests seek documents related to the revenue, income, profits, and operating expenses of Lone Mountain's coal preparation plant and refuse impoundment. Harlan Lee contends that the requested documents are relevant to prove damages on their claims for trespass, waste, and an accounting. Ark Land counters by arguing that Harlan Lee's discovery requests seek irrelevant information, that the requests are vague and ambiguous, and that the requested documents are protected by the attorney client privilege and/or work product doctrine.

In their entirety, the 10 requests seek the following from Lone Mountain:

> **REQUEST NO. 58:** Documents reporting or stating the total dollar revenues and revenues per ton resulting from sales of coal processed at Lone Mountain's coal preparation plant for each year from 2005 through the current date.
>
> **REQUEST NO. 59:** Documents reporting or stating the total net income and net income per ton resulting from sales of coal processed at Lone Mountain's coal preparation plant for each year from January 1, 2005 through the current date.
>
> **REQUEST NO. 60:** Documents reporting or stating the operating expenses relating to Lone Mountain's coal preparation plant for each year from January 1, 2005 through the current date.
>
> **REQUEST NO. 61:** Documents reporting or stating the operating expenses relating to Lone Mountain's operation of the coal refuse impoundment on the Virginia Property for each year from January 1, 2005 through the current date.

---

[3] Although Harlan Lee only seeks an order compelling the disclosure of documents responsive to requests 58-65 and 68-69 (D.E. 80 at 10), its motion to compel also identified alleged deficiencies with respect to Ark Land's response to request 57. (*Id.* at 4). However, because Harlan Lee does not expressly request an ordering compelling the disclosure of documents responsive to request 57, the Court does not address the propriety of that request in this Order.

**REQUEST NO. 62:** Documents reporting or stating projections, forecasts, or predictions of the raw coal, clean coal, and refuse tonnage relating to Lone Mountain's coal preparation plant for the years after the[4] July 31, 2009.

**REQUEST NO. 63:** Documents reporting or stating projections, forecasts, or predictions of the revenue, net income, and expenses resulting from sales of coal processed at Lone Mountain's coal preparation plant for the years after July 31, 2009.

**REQUEST NO. 64:** Documents reporting or stating projections, forecasts, or predictions of the future operations or performance of Lone Mountain's coal preparation plant including raw coal, clean coal, and refuse tonnage.

**REQUEST NO. 65:** Documents reporting or stating projections, forecasts, or predictions of the future financial performance of Lone Mountain's coal preparation plant including revenues, expenses, EBIDTA, and net income.

**REQUEST NO. 68:** Ark's annual financial statements from January 1, 2005 through the current date.

**REQUEST NO. 69:** Lone Mountain's annual financial statements from January 1, 2005 through the current date.

(D.E. 80-3). Lone Mountain responded to each of these requests with the following objection: "Lone Mountain objects to this Request on the grounds that it is vague, ambiguous, and irrelevant to this litigation. Lone Mountain further objects to this Request to the extent it seeks the discovery of documents protected from disclosure by the attorney-client privilege and/or work product doctrine." (D.E. 80-4).

### III. DISCUSSION

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.

---

[4] The Court assumes "the" in this request is a typo.

R. Civ. P. 26(b)(1). Rule 26 "has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th Cir. 2010) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "In other words, a request for discovery should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action." *Invesco Inst. (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (emphasis in original).

Indeed, the information sought through discovery need not be admissible at trial so long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Therefore, "[w]hen the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco*, 244 F.R.D. at 380.

### A. Relevancy as to Damages for Trespass

Harlan Lee primarily argues that documents responsive to their discovery requests are relevant to the damages they would be entitled to recover on their claim for trespass. With respect to Harlan Lee's trespass claim, the parties do not disagree over the two alternative types of damages a party may recover. The parties agree that under Virginia law, which controls the substantive legal issues in this case, a landowner may sue a trespasser in tort and recover the actual damage to the property—i.e., "the difference in

7

market value of the property before and after the trespass." *Klaiber v. Freemason Assocs, Inc.*, 587 S.E.2d 555, 558 n.2 (Va. 2003). Likewise, the parties agree that, except in cases of a "naked trespass," the landowner may "waive the tort and institute his action in assumpsit." *Raven Red Ash Coal Co. v. Ball*, 39 S.E.2d 231, 234-35 (Va. 1946). "[T]he gist of the action [in assumpsit] is to prevent the unjust enrichment of a wrongdoer from the illegal use of another's property . . . ." *Id.* at 237. Put another way, where a trespasser is liable in assumpsit, he becomes obligated "to pay the plaintiff the 'fair value of the benefits received' by him, the defendant, for the use and occupancy of the land." *Preston Mining Co. v. Matney*, 90 S.E.2d 155, 158 (Va. 1955) (quoting *Raven*, 39 S.E.2d at 238). The *types* of damages available to a landowner under these circumstances is what little the parties can agree on. Instead, this dispute revolves around applying these rules to appropriately calculate any potential damage award.

Harlan Lee contends that Ark Land has "profited greatly from [its] use of the Virginia Property and the operation of the refuse dump there." (D.E. 80 ¶ 24). As a result, Harlan Lee argues that "[t]he measure of damages for this wrongful use is calculated by the benefits realized (and costs avoided) by" Ark Land. (*Id.*). However, this is merely another way of restating the rule announced by the Virginia Supreme Court in *Raven*: the measure of damages for an action in assumpsit is "the 'fair value of the benefits received'" by the trespasser. *Preston*, 90 S.E.2d at 158 (quoting *Raven*, 39 S.E.2d at 238). Such a bare assertion by Harlan Lee simply does not assist the Court in its endeavor to determine the discoverability of the requested documents. The Court is left to speculate about the manner in which the requested documents will assist Harlan

8

Lee in proving the "benefits realized (and costs avoided)" by Ark Land. For example, is Harlan Lee seeking documents reporting the total net income from sales of coal processed at Lone Mountain's coal preparation plant because Harlan Lee believes those profits *are* the benefit realized by Ark Land? Or, is it requesting such documents upon the belief that they will somehow *assist* Harlan Lee in proving the benefit realized? Simply put, Harlan Lee neither describes, other than in vague detail, what it believes are the benefits realized by Ark Land, nor does it describe the manner in which the requested documents are relevant to its calculation of those benefits. Based upon the broad brush with which the discovery requests are painted, however, the Court must conclude that Harlan Lee is seeking documents related to Ark Land's profit at the Lone Mountain processing plant because it believes those are the damages (or a component thereof) it may recover in this action.[5] (*See also* D.E. 75 ¶ 48 (alleging in counterclaim that "the benefit Lone Mountain and Ark Land have received and will receive can be measured . . . by the profits Lone Mountain and Ark Land have realized from the continued operation of the coal refuse impoundment and other operations that depend on the coal refuse impoundment.")).

Ark Land, on the other hand, takes the opposite approach. It persuasively argues that the amount of damages that a landowner may recover, in circumstances similar to those alleged by Harlan Lee, is limited to the "fair rental value of the property." (D.E. 86

---

[5] In its reply, Harlan Lee acknowledges that it has not described the "benefit" it seeks to discover in great detail. (*See* D.E. 92 at 6 ("What [Harlan Lee] seek[s] is the measure of damages available under the law of assumpsit as developed in Virginia . . . .")). According to Harlan Lee, it has "had to assert this claim as broadly as possible, because, as this discovery dispute makes clear, [it] do[es] not have the necessary information to calculate [its] damages with precision." (*Id.*). Absent any further precision, however, the Court is left with only unhelpful generalities.

9

at 5). In the words of the *Raven* court, such a landowner would be entitled to the "amount of damages . . . as would fairly compensate plaintiff for the use and occupation of the land," i.e. compensation at "the prevailing rate of payment." *Raven*, 39 S.E.2d at 239. Thus, Ark Land asserts that Harlan Lee would not be entitled to the profits realized by Ark Land's coal preparation plant in the event Harlan Lee is able to prove liability. However, Ark Land does little to persuade the Court that the requested documents are entirely irrelevant. In conclusory fashion, Ark Land states that "the fair rental value of the property where the impoundment is located has *nothing* to do with the review" of the requested financial documentation. (D.E. 86 at 7 (emphasis added)). As described below, the Court does not agree.

### i. Profits as Damages

The Court does agree with Ark Land's initial argument: the requested documents are not relevant to Harlan Lee's claim for trespass to the extent Harlan Lee believes that Ark Land's profits from the coal processing plant *are* the so-called "benefits" it is entitled to recover. Harlan Lee's reliance upon *Raven* is somewhat misplaced in this regard. In *Raven*, the defendant had concededly trespassed on the plaintiff's property when he wrongfully transported a large amount of coal across an easement. *Raven*, 39 S.E.2d at 233. However, the plaintiff was unable to prove "any specific damage to the realty by the illegal use of the easement." *Id.* Therefore, the plaintiff would have been limited to nominal damages had he sued in tort. *Id.* The court, however, recognized that plaintiff could recover in assumpsit because "[t]he illegal transportation of the coal in question

across plaintiff's land was intentional, deliberate and repeated from time to time for a period of years." *Id.* at 238.

As pointed out by Harlan Lee, *Raven* indeed stands for the proposition that a landowner may recover from a trespasser the "fair value of the benefits received" by the trespasser. *Id.* However, when applying this rule, the *Raven* court found that the appropriate measure of damages for the trespass was "the value of the use of the premises for the period that the owner is kept out of possession." *Id.* at 239 (quotation omitted). The court noted that testimony related to "the prevailing rate of payment, or purchase of a right of way for transportation of coal across another's land," was the appropriate yardstick in that case for measuring assumpsit damages. *Id.* Thus, contrary to the position taken by Harlan Lee, *Raven* does not stand for the proposition that it can necessarily recover Ark Land's profits as damages should Harlan Lee prove liability on its trespass claim.

Instead, *Raven* and other subsequent Virginia cases relying upon *Raven* have concluded that, in circumstances such as those alleged by Harlan Lee, the appropriate measure of damages is the "prevailing rate of payment" for the use of the land, or for the "purchase of a right of way." *Id.* In *Mullins v. Equitable Prod. Co.*, No. 2:03CV00001, 2003 WL 21754819 (W.D. Va. July 29, 2003), Equitable (the trespasser) had wrongfully encroached upon Mullins' property when it installed an underground gas line beneath that property. *Mullins*, 2003 WL 21754819, at *1. The gas line in question was "used to transmit natural gas from certain of Equitable's gas wells." *Id.* at *1 n.3. The defendant had "obtained right-of-way agreements with the owners of the property adjoining the

11

Mullins tract but for some reason the line as built crossed one edge of the Mullins tract."

*Id.* at *1. One item of damage claimed by Mullins was "royalties" of "a million dollars" for "all the gas that has went through [the gas line]." *Id.* at *2 (quoting the plaintiff's deposition). The trial court concluded that Mullins was not entitled to such damages for an action in assumpsit and granted summary judgment.

> The evidence in the record is that Equitable paid neighboring landowners one dollar per foot for right-of-way easements over their property for the pipeline. There is no evidence that Equitable paid other landowners on the basis of the quantity of gas transmitted. Equitable did not need Mullins' land for the pipeline, evidenced by the fact that Equitable quickly relocated it once this suit was filed, so that *any benefit to Equitable from the use and occupancy of Mullins' property was either the reasonable price for the right-of-way or the cost of a substitute location*—in other words, any extra cost to Equitable in avoiding the Mullins land when it first installed the pipeline.

*Id.* at *3 (emphasis added); *see also PNG Invs., L.L.C. v. Gravely-Robinson*, 72 Va. Cir. 146, 147 (2006) ("when a trespass occurs, the injured party can waive his right to sue in tort and instead base his claim on the legal fiction of quasi contract. He can assert the existence of an implied promise to pay the fair value for the use of the property in order to prevent unjust enrichment by the wrongdoer. *That measure of damage is the fair rental value of the premises*.") (emphasis added); *Lodal v. Verizon Va., Inc.*, 74 Va. Cir. 110, 116 (2007) (*Raven* "stands for the proposition that a plaintiff may be entitled to recovery of fair compensation for the defendant's illegal use and occupation of his land, *which is not the same measure of recovery as a complete disgorgement of the defendant's profit*.") (emphasis added).

These authorities simply do not stand for the proposition that a landowner may recover the profits of the trespassing business. Furthermore, Harlan Lee has made no showing that the benefit realized by Ark Land should be measured by anything other than the "prevailing rate of payment" for the use of the land, or for the "purchase of a right of way." *Raven*, 39 S.E.2d at 239.

    *ii. Fair Rental Value of Property*

The Court is, however, persuaded that many of the requested documents are relevant to determine the fair rental value of the property. (*See* D.E. 92 at 7 ("Obviously, Ark's financial records are the best proof of the 'fair market value' of the property, its 'fair rental value,' etc. What better proof is there of how much the land should rent for than the actual figures showing how much the actual occupant has earned by using the land?"). Although somewhat of an oversimplification, the Court agrees with Harlan Lee that "fair rental value" is at least potentially "related to the revenue that a lessee could generate from the land." (*Id.*).

The *Mullins* court, for instance, pointed out that there may be circumstances peculiar to each case that may vary the manner in which fair rental value is calculated. *Mullins*, 2003 WL 21754819, at *3. Though the court in that case declined to use royalties as the basis for assessing the fair market value of the land, it recognized royalties, under the appropriate circumstances, may be a basis for doing so. *See id.* (noting that the *Raven* court awarded royalties of one cent per ton of coal transported over the disputed property "because coal haul privileges for which wheelage is paid are normally needed only in restricted circumstances, unlike gas pipelines, which frequently

cross others' property."). In other words, the Court cannot rule out the possibility that the income and other financial information related to Ark Land's nearby coal processing plant would be relevant to assist Harlan Lee in determining the fair rental value of the disputed property. That being the case, Harlan Lee is entitled to many of the requested documents under Rule 26. *See Invesco*, 244 F.R.D. at 380 ("a request for discovery should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action.").

   *iii. Scope of Discovery*

Requests for production 58-61 seek documents reporting past income, revenue, and expenses for Lone Mountain's coal processing plant and the refuse impoundment. As discussed above, the Court finds that such documents are potentially relevant to Harlan Lee's claim for trespass and, therefore, discoverable. However, the scope of the requests is overbroad. Harlan Lee seeks such documents going back to 2005, but provides no basis for seeking documents for the time period between 2005 and July 31, 2009, the date when Ark Land Company's lease allegedly terminated. It appears that Harlan Lee believes that Lone Mountain had been trespassing on the Virginia property prior to the alleged termination of the lease, but no specific time period is identified in the amended counterclaim or the motion to compel. Therefore, on this record, only the requested documents going back to July 31, 2009, are arguably relevant to Harlan Lee's assumpsit claim.

Requests 62-65 also seek potentially relevant information. Requests 62 and 64 seek documents projecting future tonnage of coal produced at Lone Mountain's coal

preparation plant. Requests 63 and 65 seek future financial projections, forecasts, and predictions related to Lone Mountain's coal preparation plant. As with requests 58-61, the Court believes that requests 62-65 are relevant to the extent they seek information necessary for Harlan Lee to determine the fair rental value of the Virginia property through the end of this litigation. Because there is no limit placed upon the scope of the requests, a reasonable limit must be imposed. Here it is appropriate to limit Harlan Lee's requests to only those documents that will allow it to calculate the fair rental value of the Virginia property through the anticipated end of this litigation. Trial is currently scheduled for August 20, 2012. Absent any information to the contrary, the Court believes that future predictions extending through August 20, 2013, will allow Harlan Lee sufficient data to be able to calculate the fair rental value of the property through the anticipated end of the litigation.

Contrary to Ark Land's objection, requests 58-65 are not vague or ambiguous; the requests are specific enough for Ark Land to produce responsive documents. On the other hand, it is not necessary for Harlan Lee to obtain Ark Land Company's and Lone Mountain's entire financial statements in order to calculate the fair rental value of the Virginia property. No showing has been made identifying the need for a global financial picture of these companies, like that sought in requests 68 and 69, to calculate Harlan Lee's damages. Such calculation can be made pursuant to the information it is entitled to discover in requests 58-65.[6]

---

[6] Harlan Lee raises concerns about Ark Land selecting the documents that it must produce. It contends that the documents produced so far have no indicia of completeness or accuracy. However, the Court believes that the result reached herein strikes the proper balance between Harlan Lee's right to

### B. Relevancy as to Waste Claim

Furthermore, the Court agrees with Harlan Lee that requests for production 62 and 64, which seek documents predicting future coal tonnage at the Loan Mountain processing plant, seek information relevant to Harlan Lee's waste claim. Under Virginia law, waste is "a destruction or material alteration or deterioration of the freehold, or of the improvements forming a material part thereof, by any person rightfully in possession, but who has not the fee title or the full estate." *Chosar Corp. v. Owens*, 370 S.E.2d 305, 307 (Va. 1988) (quotation and internal markings omitted). A tenant committing waste is "liable to his cotenants, jointly or severally, for damages." *Id.* (quoting Va. Code Ann. § 55-212). Additionally, a court of equity may grant an injunction "where the injury is material, continuing, and not adequately remedied in damages." *Id.* Harlan Lee is entitled to discover documents predicting future coal tonnage to assist it and the Court in determining whether injunctive relief is an appropriate remedy. That is, the requested documents are relevant to show Ark Land's expected use of the impoundment going forward.

### C. Relevancy as to Claim for Accounting

Finally, Harlan Lee argues that the information sought by the disputed discovery requests is relevant to its claim for an accounting. Virginia law provides that "[a]n accounting in equity may be had against any fiduciary or by one joint tenant, tenant in

---

discovery with the need to prevent "fishing expeditions." *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). Ark Land is obviously required to comply with the requirements of Rule 26 and this Order. To the extent Harlan Lee believes that Ark Land's discovery responses are incomplete, it may seek further relief from the Court in accordance with the procedures set forth in the Court's Scheduling Order.

common, or coparcener for receiving more than comes to his just share or proportion, or against the personal representative of any such party." Va. Code Ann. § 8.01-31. Harlan Lee recognizes that the "general rule" provides "that where a tenant in common uses the common property to the exclusion of his co-tenants, or occupies and uses more than his just share and proportion, the best measure of his accountability to his co-tenants is their shares of a fair rent of the property so occupied and used by him." *Newman v. Newman*, 68 Va. 714, 722 (1876). Thus, "the occupying tenant is liable only for the fair value of the property in the condition in which it was at the time it went into his possession, and that the cotenants are not entitled to the benefit of the issues and profits made by the application of the skill and capital of the occupying tenants bestowed on the common property." *White v. Stuart, Buchanan & Co.*, 76 Va. 546, 567 (1882). As it does not appear that Harlan Lee would be able to recover any more on its accounting claim than it may recover on its claim in assumpsit—i.e., the fair rental value of the property—Harlan Lee is entitled to no additional discovery with respect to its accounting claim.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED** that Harlan Lee's motion to compel (D.E. 80) is **GRANTED in part** and **DENIED in part**. Within 10 days of the entry of this Order, Lone Mountain Processing, Inc. **SHALL PRODUCE** to Harlan Lee the following:

1. Documents reporting or stating the total dollar revenues and revenues per ton resulting from sales of coal processed at Lone Mountain's coal preparation plant for each year from July 31, 2009, through the current date.

2. Documents reporting or stating the total net income and net income per ton resulting from sales of coal processed at Lone Mountain's coal preparation plant for each year from July 31, 2009, through the current date.

3. Documents reporting or stating the operating expenses relating to Lone Mountain's coal preparation plant for each year from July 31, 2009, through the current date.

4. Documents reporting or stating the operating expenses relating to Lone Mountain's operation of the coal refuse impoundment on the Virginia Property for each year from July 31, 2009, through the current date.

5. Documents reporting or stating projections, forecasts, or predictions of the raw coal, clean coal, and refuse tonnage relating to Lone Mountain's coal preparation plant for the years from July 31, 2009, until August 20, 2013.

6. Documents reporting or stating projections, forecasts, or predictions of the revenue, net income, and expenses resulting from sales of coal processed at Lone Mountain's coal preparation plant for the years from July 31, 2009, until August 20, 2013.

7. Documents reporting or stating projections, forecasts, or predictions of the future operations or performance of Lone Mountain's coal preparation plant including raw coal, clean coal, and refuse tonnage for the years from July 31, 2009, until August 20, 2013.

8. Documents reporting or stating projections, forecasts, or predictions of the future financial performance of Lone Mountain's coal preparation plant including

revenues, expenses, EBIDTA, and net income for the years from July 31, 2009, until August 20, 2013.

Such production shall be made in accordance with Federal Rules of Civil Procedure 26 and 34.

The Court understands that Ark Land has made privilege objections to each of the disputed discovery requests. Nothing herein precludes Ark Land from continuing to maintain that any documents that would otherwise be discoverable are protected by the attorney-client or work-product privileges. Of course, such claims of privilege must be raised in a manner consistent with the Federal Rules of Civil Procedure.

This the 31st day of October, 2011.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge